1
2
3
4
5
6
7

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

8

RODOLFO FERNANDEZ, et al.,

2:12-CV-295 JCM (GWF)

9            Plaintiffs,

10   v.

11   PENSKE TRUCK LEASING CO., L.P.,
12   et al.,

13            Defendants.

14

15                    **ORDER**

16        Presently before the court is defendant Penske Logistics, LLC, Penske Truck Leasing

17   Company, L.P., and Penske Truck Leasing Corporation's (hereinafter "Penske") motion to dismiss

18   for failure to state a claim. (Doc. #5). Plaintiffs Rodolfo Fernandez and Anthony Allen have filed

19   an opposition (doc. #13) to which Penske has replied (doc. #14). For the reasons that follow, the

20   court finds it appropriate to grant the motion as to plaintiffs' negligence per se claim, but deny it as

21   to all other substantive causes of action.

22   **I.    Background**

23        Plaintiffs are employees of non-party Mainline Transportation, Inc. and/or Mainline Moving

24   & Storage (hereinafter "Mainline"). Doc. #1-6, Compl. ¶ 14. Penske allegedly entered into a rental

25   agreement with Mainline on July 19, 2010, whereby Penske agreed to rent a commercial truck to

26   Mainline. *Id.* at ¶ 8. Apparently, the rental agreement was for a single day rental, whereby Mainline

27   was supposed to use the truck for one day and subsequently return it. *Id.* at ¶ 9. Mainline, however,

28

**James C. Mahan**
**U.S. District Judge**

kept the truck for nearly six months, driving it for more than 46,000 miles.  *Id.*  The cause for Mainline's substantial delay is unclear.  However, it appears that Mainline and Penske may have entered into a modification that increased the rental term.

Plaintiffs allege that Penske wrote a later dated December 21, 2010 to Mainline that referenced a modified contract.  The letter apparently states that the "rewritten" contract between the parties calls for a rental return date of December 6, 2010.  *Id.* ¶ 12.  Despite the date on the letter, it was not mailed until January 3, 2011.  *Id.*  Plaintiffs aver that a partial payment from Mainline to Penske had cleared in the interim, causing Penske to delay in mailing the letter.  *Id.*

Ten days after the letter was mailed, on January 13, 2011, a Penske employee contacted the Las Vegas Metropolitan Police Department and reported the truck stolen.  *Id.* at ¶ 13.  Plaintiffs allege that the employee represented that Penske presented Mainline with a payment delinquency notice and that Mainline failed to heed the notice and pay the delinquency or return the truck.

Police officers located the truck a few hours after it had been reported stolen by Penske.  At the time, both plaintiffs were in possession of the truck and operating it as part of their employment duties with Mainline.  *Id.* at ¶ 14.  Plaintiffs were not aware of either the business dispute between Penske and Mainline or that the truck they were operating had been reported stolen.  *Id.* at ¶ 15.

The officers arrested both plaintiffs on charges of grand theft auto.  Plaintiffs were held in jail for seven days and had to post bail in order to obtain their release.  Plaintiffs were able to successfully exonerate themselves of the felony charges, and filed the instant suit against Penske alleging: (1) negligence; (2) intentional infliction of emotional distress; (3) negligent infliction of emotional distress; (4) negligence per se; (5) respondeat superior;[1] and, (6) alter-ego.[2]  After a

---

[1] Respondeat superior is a theory of holding an employer vicariously liable for the torts of its employee, it is not an independent cause of action.  Accordingly, the court will disregard the fifth "cause of action" for purposes of the instant motion to dismiss. *See Cruz v. Durbin*, 2011 U.S. Dist. LEXIS 51057, *3 (D. Nev. 2011).

[2] Similar to the defect with the respondeat superior "cause of action," alter-ego is a theory of liability aimed at penetrating a corporation's limited liability protection, it is not an independent cause of action.  Accordingly, the court will disregard the sixth "cause of action" for purposes of the instant motion to dismiss. *See Taddeo v. Taddeo*, 2011 U.S. Dist. LEXIS 103649, *28 (D. Nev.

1    tortured procedural history, causing plaintiffs to appear in three courts across two states, they have

2    finally arrived at this juncture.

3    **II.    Discussion**

4         *1.    Standard of Review*

5         A plaintiff must include a "short and plain statement of the claim showing that the pleader

6    is entitled to relief." FED. R. CIV. P. 8(a)(2).  The statement of the claim is intended to "give the

7    defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atlantic Corp.*

8    *v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted).  Pursuant to Federal Rule of Civil

9    Procedure 12(b)(6), courts may dismiss causes of action that "fail[] to state a claim upon which relief

10   can be granted."  In effect, a motion under Rule 12(b)(6) tests whether the allegations raised in the

11   complaint satisfy the Rule 8 requirement.

12        Courts must "accept all factual allegations in the complaint as true." *Tellabs, Inc. v. Makor*

13   *Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).  However, "[t]o survive a motion to dismiss, a

14   complaint must contain sufficient factual matter . . . to state a claim to relief that is plausible on its

15   face." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (internal citations omitted).  Although "not

16   akin to a 'probability requirement,'" the plausibility standard asks for more than a sheer possibility

17   that a defendant has acted unlawfully. *Id.*  "A claim has facial plausibility when the plaintiff pleads

18   factual content that allows the court to draw the reasonable inference that the defendant is liable for

19   the misconduct alleged." *Id.*

20        *2.    Analysis*

21        <u>First Claim for Relief:  Negligence</u>

22        Generally speaking, "negligence is [the] failure to exercise that degree of care in a given

23   situation which a reasonable man under similar circumstances would exercise." *Driscoll v.*

24   *Erreguible*, 87 Nev. 97, 101 (1971).  To prevail on a negligence claim, plaintiff must establish four

25   elements: (1) the existence of a duty of care, (2) breach of that duty, (3) legal causation, and (4)

26   damages. *Sanchez v. Wal-Mart Stores*, 125 Nev. 818, 824 (2009).

27   _____

28   2011).

**James C. Mahan**
**U.S. District Judge**

1    While breach of duty and causation are "classically questions of fact" *see Frances v. Plaza*

2    *Pacific Equities*, 109 Nev. 91, 94 (1993), Penske correctly argues that the question of whether a duty

3    exists at all is a question of law that can be decided at this early stage of the proceedings.  *See*

4    *Ashwood v. Clark Co.*, 113 Nev. 80, 84 (1997) ("It is the courts and not juries that have the ultimate

5    responsibility of defining duty in relation to the particular circumstances and to define the legal

6    standard of reasonable conduct in light of the apparent risk.").

7    Penske argues that because plaintiffs have failed to allege any relationship with Penske, there

8    are no alleged facts sufficient to give rise to a duty of care.  Mot. Dismiss pgs. 5-7.  Penske cites a

9    California case, *Ratcliff Architects v. Vanir Const. Mgmt.*, 88 Cal. App. 4th 595, 605 (2001), for the

10   proposition, "in the absence of a statute or contract expressly giving rise to a legal duty, a duty of

11   care may arise through the relationship between the party."  Penske apparently argues that there is

12   no statute giving rise to a duty, no contract giving rise to a duty, and no relationship alleged form

13   which the court may infer a duty of care.

14   While the court agrees with the precedent cited by Penske, it disagrees with the conclusion

15   Penske draws from those cases.  Here, there are sufficient factual allegations to support a finding that

16   a legal duty existed, either by contract or through the relationship of the parties.  The complaint

17   alleges a contract between Penske and Mainline.  Compl. ¶ 8.  This allegation could plausibly give

18   rise to a duty of care owed by Penske to those Mainline employees that were driving the truck

19   pursuant to the rental agreement.

20   Furthermore, even if the contract did not give rise to such a duty, the allegations in the

21   complaint could plausibly give rise to a duty owed to plaintiffs by virtue of the business relationship

22   between Penske and plaintiffs' employer.  *See* Compl. ¶ 8, 14-15.  The facts, as alleged in the

23   complaint, therefore meet the plaintiffs' pleading burden and are sufficient for this court to uphold

24   the complaint over a Rule 12(b)(6) challenge.  There are sufficient facts to establish a duty, rooted

25   either in contract or by virtue of business dealings, for Penske and its employees to "exercise that

26   degree of care [vis-a-vis Mainline and its employees] which a reasonable man under similar

27   circumstances would exercise."  *See Driscoll*, 87 Nev. at 101.

28

**James C. Mahan**
**U.S. District Judge**

- 4 -

1             <u>Second Claim for Relief:  Intentional Infliction of Emotional Distress</u>

2        The elements of intentional infliction of emotional distress are "(1) extreme and outrageous

3 conduct with either the intention of, or reckless disregard for, causing emotional distress, (2) the

4 plaintiff's having suffered severe or extreme emotional distress and (3) actual or proximate

5 causation."  *Star v. Rabello*, 97 Nev. 124, 125 (1981).  Penske argues that plaintiffs have failed to

6 state a claim for intentional infliction of emotional distress because they have not alleged facts to

7 support a finding that Penske acted with the requisite intent to cause emotional distress and because

8 the conduct complained of was not sufficiently extreme and outrageous.

9        Penske argues that "it would belie logic to find that Penske had the requisite tortious intent

10 to inflict emotional harm on people with whom it had absolutely no relationship and did not even

11 know existed."  Mot. Dismiss at 9:25-27.  However, Penske and its employees need not have a

12 relationship with people in order to formulate an intent to harm them.  Here, Penske had a

13 relationship with Mainline.  The complaint makes clear that the relationship had soured to a certain

14 degree.  From these facts, the court can infer that Penske and its representatives might have reported

15 the truck stolen in order to cause harm to Mainline.  As an organizational entity, the only harm

16 Mainline could suffer would be reputational and/or financial.  However, the employees of Mainline

17 could face more serious danger as a result of Penske's decision to report the truck stolen.  As such,

18 the court rejects Penske's argument regarding the logic of its ability to formulate intent.  There was

19 enough of a relationship here that "it would [not] belie logic to find that Penske had the requisite

20 tortious intent."

21        As to Penske's second argument, the court cannot find, as a matter of law, that Penske's

22 actions were not sufficiently extreme and outrageous to support a claim for intentional infliction of

23 emotional distress.  Extreme and outrageous conduct is that which is "outside all possible bounds

24 of decency and is regarded as utterly intolerable in a civilized community."  *Maduike v. Agency Rent-*

25 *A-Car*, 114 Nev. 1, 4 (1998) (quoting California Book of Approved Jury Instructions No. 12.74).

26 "The jury [is] entitled to determine, considering prevailing circumstances, contemporary attitudes

27 and [plaintiffs'] own susceptibility, whether the conduct in question constitute[s] extreme outrage."

28

**James C. Mahan**
**U.S. District Judge**

1  *Posadas v. City of Reno*, 109 Nev. 448, 456 (1993) (quoting *Branda v. Sanford*, 97 Nev. 643, 649

2  (1981).  At this early stage in the proceedings, the parties have not even engaged in any discovery

3  and the facts regarding the full context and circumstances regarding the phone call to police is still

4  unknown to plaintiffs.  As a result, dismissal is inappropriate.

5  <u>Third Claim for Relief:  Negligent Infliction of Emotional Distress</u>

6  Plaintiffs claim for negligent infliction of emotional distress fails, because plaintiffs allege

7  that they were the direct victims of Penske's allegedly negligent actions.  In *Shoen v. Amerco*, 111

8  Nev. 735, the Nevada Supreme Court explained that negligent infliction of emotional distress claims

9  include "a bystander's emotional injury caused by witnessing physical injury to a third-person caused

10 by defendant's negligence."  *Id.* at 748.  However, a "direct victim," as opposed to a bystander, can

11 "assert a negligence claim that includes emotional distress as part of the damage suffered as well as

12 an intentional tort cause of action."  *Id.*

13 Accordingly, a direct victim, such as plaintiffs here, may bring an intentional infliction of

14 emotional distress claim, but may not assert a negligent infliction of emotional distress claim.  Where

15 the evidence "presents a close case of whether an intentional or a negligent act was committed" the

16 direct victim may also seek recovery for emotional distress through a simple negligence claim.  *See*

17 *id.*; *see also Kennedy v. Carriage Cemetery Services, Inc.*, 727 F. Supp. 2d 925, 934-35 (D. Nev.

18 2010) ("[a]lthough *Shoen* made emotional harm available as a measure of damages for a simple

19 negligence claim, the case did not expand the NIED cause of action itself to include an alternative

20 to IIED where the defendant's extreme and outrageous conduct was merely negligent.").

21 <u>Fourth Claim for Relief:  Negligence Per Se</u>

22 "[V]iolation of a statute may constitute negligence *per se* only if the injured party belongs

23 to the class of persons that the statute was intended to protect, and the injury is of the type that the

24 statute was intended to prevent."  *Sagebrush Limited v. Carson City*, 99 Nev. 204, 208 (1983).

25 Plaintiffs apparently premise their negligence per se cause of action on an alleged violation of NRS

26 § 483.610.  *See* Compl. ¶ 57.

27

28

**James C. Mahan**
**U.S. District Judge**

The statute in question requires that any renter of motor vehicles ensure that the person renting the vehicle is duly licensed and maintain records of all individuals that have rented motor vehicles for police inspection. *See* NRS § 483.610. Specifically, the statute requires:

1.   No person shall rent a motor vehicle to any other person unless the latter person is then duly licensed under NRS 483.010 to 483.630, inclusive, or, in the case of a nonresident, then duly licensed under the laws of the state or country of his or her residence except a nonresident whose home state or country does not require that a driver be licensed.

2.   No person shall rent a motor vehicle to another until the person has inspected the driver's license of the person to whom the vehicle is to be rented and compared and verified the signature thereon with the signature of such person written in his or her presence.

3.   Every person renting a motor vehicle to another shall keep a record of the registration number of the motor vehicle so rented, the name and address of the person to whom the vehicle is rented, the number of the license of the latter person and the date and place when and where the license was issued. Such record shall be open to inspection by any police officer or officer of the Department.

NRS § 483.610.

The statute, as written, appears aimed at protecting members of the general public from the harms posed by unlicensed or incompetent drivers. The goal is ensuring public safety on the state's roads. This conclusion is strengthened by comparing the statute at issue with a similarly worded statute in California. *See City of Las Vegas Downtown Redev. Agency v. Crocket*, 117 Nev. 816, 824-825 (2001) (looking to California's judicial interpretations of a California statute analogous to Nevada's statute); *see also* 2B Norman J. Singer, *Statutes and Stutory Construction* § 52:02, at 282 (6th ed. 2000) ("When the legislature of a state adopts a statute which is identical or similar to one in effect in another state or country, the courts of the adopting state usually adopt the construction placed on the statute in the jurisdiction in which it originated.").

California Vehicle Code § 14608 imposes a similar duty on rental companies to ensure that those renting vehicles are properly licensed. The statute states:

No person shall rent a motor vehicle to another unless:

(a)   The person to whom the vehicle is rented is licensed under this code or is a nonresident who is licensed under the laws of the state or country of his or her residence.

James C. Mahan
U.S. District Judge

- 7 -

(b)     The person renting to another person has inspected the driver's license of the person to whom the vehicle is to be rented and compared the signature thereon with the signature of that person written in his or her presence.

(c)     Nothing in this section prohibits a blind or disabled person who is a nondriver from renting a motor vehicle, if both of the following conditions exist at the time of rental:

(1)     The blind or disabled person either holds an identification card issued pursuant to this code or is not a resident of this state.

(2)     The blind or disabled person has a driver present who is either licensed to drive a vehicle pursuant to this code or is a nonresident licensed to drive a vehicle pursuant to the laws of the state or country of the driver's residence.

Cal. Veh. Code § 14608.

California courts have recognized that § 14608's requirements are aimed at ensuring public safety by prohibiting the renting of vehicles to unlicensed or incompetent drivers. *See, e.g., Osborn v. Hertz Corp.*, 205 Cal. App. 3d 703, 709 (Cal. Ct. App. 1988); *see also Owens v. Carmichael's U-Drive Autos*, 116 Cal. App 348, 351-52 (Cal. Ct. App. 1931) (explaining that requirement that rental agencies inspect driver licenses "is in effect a certificate evidencing the fact that the holder had demonstrated his competency [to drive]" and that the requirement is "designed for the protection of the public.").

Accordingly, the harm the statute sought to protect against was unlicensed or incompetent drivers roaming the streets and placing the general public in danger.  The harm plaintiffs seek redressed, however, is materially different.  Here, the plaintiffs argue that if Penske would have maintained a driver license on file from Mainline, then the plaintiffs would not have been arrested for grand theft and jailed for seven days.  The claim fails because (1) plaintiffs have not established that they were harmed in the sense that the statute was aimed to prevent and (2) plaintiffs have failed to establish that the statute was enacted to protect those similarly situated to them. *See Sagebrush*, 99 Nev. at 208.

Here, the harm the legislature attempted to protect against was motor vehicle accidents and unsafe driving.  This harm bears no relation to the harm plaintiffs allegedly suffered.  Second, the statute was aimed at protecting the general public, those motorists and pedestrians sharing the roadway with individuals driving rented vehicles.  Here, the plaintiffs are the renters, not the

James C. Mahan
U.S. District Judge

- 8 -

1    motorists or bystanders to which a renter may pose a risk.  Plaintiffs' claim for negligence per se

2    fails.

3    **III.     Conclusion**

4            Pursuant to the analysis above, the majority of plaintiffs' claims for relief are properly pled

5    and shall move forward.  Plaintiffs have failed, however, to properly plead a cause of action for

6    negligence per se as they have not identified the violation of a statute that was enacted to protect

7    those similarly situated to plaintiffs.  Accordingly, that claim for relief shall be dismissed.

8            IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED, that Penske's motion to

9    dismiss for failure to state a claim (doc. #5) be, and the same hereby is, GRANTED in part and

10   DENIED in part, consistent with the foregoing.

11           DATED May 18, 2012.

12

13   _____

14   **UNITED STATES DISTRICT JUDGE**

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**James C. Mahan**
**U.S. District Judge**                                                          - 9 -