1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

RODOLFO FERNANDEZ, et al.,

          Plaintiffs,

v.

PENSKE TRUCK LEASING CO., L.P., et al.,

          Defendants.

2:12-CV-295 JCM (GWF)

**ORDER**

    Presently before the court is defendants', Penske Logistics, LLC, Penske Truck Leasing Co., L.P., and Penske Truck Leasing Corporation (collectively "Penske defendants"), motion for summary judgment. (Doc. # 49). Plaintiffs, Anthony Allen and Rodolfo Fernandez, filed a response in opposition (doc. # 52), and defendants filed a reply (doc. # 56).

    Also before the court is plaintiffs' objections pursuant to local rule IB 3-1, or for the district judge to reconsider the magistrate judge's order on motion to compel. (Doc. # 58). Defendants filed a response to the objections (doc. # 59), and plaintiffs have not filed a reply.

I.    Background

    The following facts are undisputed.[1]  On or about July 21, 2010, the Penske defendants entered into a rental contract with  non-party Mainline Transportation, Inc. and/or Mainline Moving

---

    [1] Plaintiffs have also offered a set of undisputed facts.  However, these facts are from the declaration of plaintiffs' counsel, who has no personal knowledge of the facts in this case.

**James C. Mahan**
**U.S. District Judge**

& Storage ("Mainline"). Mainline rented trucks from Penske to use in its business operations. The rental agreement allowed any employees or contractors of Mainline to operate the truck in the commercial rental.

The rental agreement contract between Penske and Mainline had a term of one week. The instant contract was "rewritten" on several occasions, which was a customary practice for Penske. Rewriting the contract would extend the rental term for an additional week after authorization from the customer's (Mainline in this case) credit card. Essentially, Penske would charge the customer's credit card at the end of the week. If the charge was authorized and the customer had not returned the rented vehicle, then the term would automatically extend for an additional week.

The rental agreement included remedies in the event of a default, defined as a failure to pay charges when due. Those remedies included a condition that permitted Penske to report one of its vehicles stolen if not timely returned.

Plaintiffs in this case worked as independent contractors for Mainline. Neither plaintiff had any involvement in the rental transaction; however, each plaintiff was authorized to operate one of Penske's trucks as a contractor for Mainline.

Between July 21, 2010, and December 21, 2010, Penske sales representative Diana Wilson ("Wilson") spoke with Mainline at least six times after Mainline's credit cards were declined. As of December 21, 2010, Mainline had an outstanding balance of more than $10,000 on its account, which included charges for trucks rented on July 21, 2010. On December 21, 2010, Wilson faxed a letter to Mainline demanding payment in full or return of the three trucks then in Mainline's possession. The letter warned that if Mainline failed to return the trucks within 24 hours, then Penske would report the trucks stolen. Wilson had conversations with Mainline representatives subsequent to December 21, 2010, where Mainline admitted received the demand letter.

Mainline represented it would pay at least some of the outstanding balance by January 3, 2011. Mainline failed to do so and Wilson sent via overnight mail a second demand letter.

On January 5, 2011, Mainline paid $1,000 on its account. Mainline also represented that it would pay the balance of the account on January 7, 2011, or on January 10, 2011.

**James C. Mahan**
**U.S. District Judge**

On January 11, 2011, Mainline did not return the trucks or pay the balance. Wilson contacted Mainline via telephone and informed Mainline that she would report the trucks stolen that same day. Mainline represented that Penske could pursue its remedies under the terms of the rental agreement and that it did not have the funds to pay the outstanding balance.

Wilson discussed the matter with district rental manager John Palfin ("Palfin"). Wilson waited two additional days and reported the trucks stolen on January 13, 2011. That same day, police pulled over one of the trucks. The truck was being driven by plaintiffs at the time. Police arrested the plaintiffs for grand theft auto. Neither plaintiff was prosecuted.[2]

Based on the foregoing set of facts plaintiffs filed suit against Penske. This court allowed certain causes of action to survive the motion to dismiss stage. (See doc. # 21). Penske now moves for summary judgment on the remaining claims.

II.    Reconsideration of Magistrate Order

Magistrate Judge Foley denied plaintiffs' motion to compel defendants' production of certain witnesses for deposition. (Doc. # 55). Plaintiffs object on four grounds and the court will address each in turn.

A.    Legal Standard

Local rule IB 3-1 states in pertinent part that "[a] district judge may reconsider any pretrial matter referred to a magistrate judge in a civil or criminal case pursuant to LR IB 1-3, where it has been shown that the magistrate judge's ruling is clearly erroneous or contrary to law."

B.    Discussion

As a preliminary matter, plaintiffs fail to provide the legal standard in their motion. Plaintiffs do not appear to argue that the magistrate judge's ruling "is clearly erroneous or contrary to law." Rather, it appears that plaintiffs are unhappy with the outcome and want this court to hear the arguments they made to the magistrate judge. This is not a proper objection under LR IB 3-1; nevertheless, the court will go to the merits of the objections.

---

[2] Plaintiffs argue that some of the facts presented by Penske, and relied on by the court, are disputed. However, plaintiffs have provided no authenticated evidence to corroborate their own version of the facts. Additionally, plaintiffs admit that none of the facts they dispute would alter the court's liability analysis.

1          I.      Notice of Depositions

2          First, plaintiffs object to the magistrate judge's findings that their notice of depositions were

3   not reasonable.   In this case, plaintiffs noticed defendants eleven days prior to the scheduled

4   deposition.  The magistrate judge found this was unreasonable under the circumstances of this case,

5   which is the correct legal standard.  Paul v. Winco Holdings, Inc., 249 F.R.D. 643, 656 (D. Idaho

6   2008) ("Although Rule 30(b)(1) requires that reasonable notice of depositions be given, the court

7   must determine what is reasonable based on the circumstances of a particular case.").

8          The magistrate judge found that, in this case, eleven days was unreasonable for the following

9   reasons: (1) the depositions were scheduled unilaterally by plaintiffs without conferring with

10  defendants; (2) the notices were given during the Christmas holiday; (3) the depositions were also

11  scheduled during the winter holiday season; and, (4) plaintiffs waited until the eve of the close of

12  discovery to notice the subject depositions.  The court agrees with the magistrate judge outright that

13  the notices were unreasonable under the circumstances–the magistrate judge's order certainly did

14  not rise to the level of "clearly erroneous or contrary to law."  The objection is overruled.

15          ii.     Location of Depositions

16         Second, plaintiffs object to the magistrate judge's findings for the scheduled locations of the

17  depositions.  Plaintiffs scheduled the depositions of certain Penske PMKs to occur in Las Vegas.

18  However, the magistrate judge found that the proper location would be at corporate headquarters in

19  Pennsylvania. See Fausto Credigy Servs. Corp., 251 F.R.D. 427, 429 (N.D. Cal. 2008) (holding that

20  corporate designees "are normally deposed at the corporation's principal place of business.").

21         Plaintiffs objections fail for all the followings reasons: (1) this is a moot issue since the court

22  agrees with the magistrate judge's finding that the notices were unreasonable; (2) the magistrate

23  judge correctly identified and applied the correct law, i.e. the decision was not clearly erroneous or

24  contrary to law; and, (3) the court agrees with the magistrate judge outright.  The objection is

25  overruled.

26          iii.    Meet and Confer

27         Third, plaintiff object to the magistrate judge's reliance on local rule 26-7, which requires

28

James C. Mahan
U.S. District Judge                                          - 4 -

a moving party to include a statement that they engaged in a sincere effort to meet and confer in good faith prior to filing certain discovery motions.  It is true that the magistrate judge found plaintiffs did not comply with the meet and confer requirements of local rule 26-7.  Nevertheless, the magistrate judge analyzed the merits of plaintiffs' motion.

The court finds that: (1) if the magistrate had relied solely on the meet and confer requirements of local rule 26-7 then it would have been proper; and, (2) plaintiffs' objections that the magistrate judge denied their motion solely pursuant to local rule 26-7 is not an accurate reading of the order; and, (3) the magistrate judge went to the merits of the motion.  The objection is overruled.

iv.  Prejudice to Plaintiffs

Fourth, plaintiffs object to the magistrate judge's order because it prejudices plaintiffs from prosecuting their case.  This objection is conclusory and made in two sentences.  Plaintiffs do not state how they are prejudiced or how they could not have conducted any discovery they would have wanted within time allotted for discovery (which was extended twice).  The objection is overruled.

III.  Summary Judgment

A.  Legal Standard

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis.  "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case."  *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213

James C. Mahan
U.S. District Judge

1   F.3d 474, 480 (9th Cir. 2000) (citations omitted).

2          In contrast, when the nonmoving party bears the burden of proving the claim or defense, the

3   moving party can meet its burden in two ways:  (1) by presenting evidence to negate an essential

4   element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to

5   make a showing sufficient to establish an element essential to that party's case on which that party

6   will bear the burden of proof at trial.  *See Celotex Corp.*, 477 U.S. at 323–24.  If the moving party

7   fails to meet its initial burden, summary judgment must be denied and the court need not consider

8   the nonmoving party's evidence.  *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

9          If the moving party satisfies its initial burden, the burden then shifts to the opposing party

10  to establish that a genuine issue of material fact exists.  *See Matsushita Elec. Indus. Co. v. Zenith*

11  *Radio Corp.*, 475 U.S. 574, 586 (1986).  To establish the existence of a factual dispute, the opposing

12  party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the

13  claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions

14  of the truth at trial."  *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th

15  Cir. 1987).

16         In other words, the nonmoving party cannot avoid summary judgment by relying solely on

17  conclusory allegations that are unsupported by factual data.  *See Taylor v. List*, 880 F.2d 1040, 1045

18  (9th Cir. 1989).  Instead, the opposition must go beyond the assertions and allegations of the

19  pleadings and set forth specific facts by producing competent evidence that shows a genuine issue

20  for trial.  *See Celotex Corp.*, 477 U.S. at 324.

21         At summary judgment, a court's function is not to weigh the evidence and determine the

22  truth, but to determine whether there is a genuine issue for trial.  *See Anderson v. Liberty Lobby, Inc.*,

23  477 U.S. 242, 249 (1986).  The evidence of the nonmovant is "to be believed, and all justifiable

24  inferences are to be drawn in his favor."  *Id.* at 255.  But if the evidence of the nonmoving party is

25  merely colorable or is not significantly probative, summary judgment may be granted.  *See id.* at

26  249–50.

27  . . .

28

**James C. Mahan**
**U.S. District Judge**

- 6 -

**B.      Discussion**

Penske now moves for summary judgment on the remaining claims: negligence and intentional infliction of emotional distress.  The court will address each in turn.

As a preliminary matter, it is worth noting that plaintiffs, in addition to providing no supporting evidence, have changed their theory of liability.  In the complaint, plaintiffs allege that Penske committed certain common law torts because Penske reported the trucks stolen when it had no reason to do so.  In the response to the motion for summary judgment, plaintiffs argue that Penske committed certain common law torts for entrusting the vehicles to Mainline, who plaintiffs allege for the first time was never a real corporate entity, when Penske should never had done so. Nevertheless, the court will analyze the merits of each of the remaining claims.

**I.      Negligence**

To prevail on a claim for negligence, a plaintiff must generally show that: (1) the defendant owed a duty of care to the plaintiff; (2) the defendant breached that duty; (3) the breach was the legal cause of the plaintiff's injury; and, (4) the plaintiff suffered damages.  *Scialabba v. Brandise Const. Co.*, Inc., 112 Nev. 965, 968, 921 P.2d 928, 930 (Nev. 1996).

"Whether a defendant owes a plaintiff a duty of care is a question of law."  Id.  The court finds that Penske owed no duty to plaintiffs.[3]  Plaintiffs were not part of the rental agreement and were not even employees of Mainline.

Additionally, the court finds as a matter of law that Penske did not breach any duty.  The contract permitted Penske to report the truck stolen as a remedy.  Penske properly reported the truck stolen after: (1) Mainline defaulted on its payments; (2) Penske warned Mainline that it could report the truck stolen; (3) Mainline failed to pay its outstanding debts as promised; and, (4) Penske warned Mainline a second time of its intent to report the truck stolen.

Plaintiffs have not provided any evidence that Penske improperly or negligently reported the truck stolen.  There is no genuine issue of material fact.  The court finds that Penske did not act

---

[3] To impose a duty on Penske in this case would essentially require Penske in the future to track down the identity of a driver of one of its rented trucks and contact that driver to warn the driver that his or her employer is delinquent on its payments and the truck has been reported stolen.  This would not be good policy.

1    negligently as a matter of law and the cause of action is dismissed.

2                    ii.      Intentional Infliction of Emotional Distress

3            The elements for intentional infliction of emotional distress are: (1) extreme and outrageous

4    conduct with either the intention of, or reckless disregard for, causing emotional distress; (2) the

5    plaintiff's having suffered severe or extreme emotional distress, and (3) actual or proximate

6    causation. Star v. Rabello, 97 Nev. 124, 125, 625 P.2d 90, 91-92 (Nev. 1981). "[E]xtreme and

7    outrageous conduct is that which is outside all possible bounds of decency and is regarded as utterly

8    intolerable in a civilized community." Maduike v. Agency Rent-A-Car, 114 Nev. 1, 4, 953 P.2d 24,

9    26 (Nev. 1998) (internal citations and quotations omitted). "The Court determines whether the

10   defendant's conduct may be regarded as extreme and outrageous so as to permit recovery, but, where

11   reasonable people may differ, the jury determines whether the conduct was extreme and outrageous

12   enough to result in liability." Welder v. University of Southern Nevada, 833 F.Supp.2d 1240, 1245

13   (D. Nev. 2011).

14           Penske had a contractual right to report the truck stolen because Mainline defaulted on its

15   payment obligations under the rental agreement. Mainline's was substantially delinquent under the

16   rental agreement at the time Penske reported the truck stolen. Plaintiffs have offered no evidence

17   to the contrary. Penske did not act outside the bounds of decency or conduct itself in a manner as

18   utterly intolerable in a civilized community by reporting the truck stolen in this case. Compliance

19   with contractual terms, assuming the contract is valid and enforceable, does not fall outside the all

20   possible bounds of decency.

21   IV.     Conclusion

22           The court finds that there are no genuine issues of material fact on any of plaintiffs'

23   remaining claims.

24           Accordingly,

25           IT IS HEREBY ORDERED, ADJUDGED, DECREED that defendants' motion for summary

26   judgment (doc. # 49) be, and the same hereby, is GRANTED.

27   . . .

28

**James C. Mahan**
**U.S. District Judge**

- 8 -

IT IS FURTHER ORDERED, that plaintiffs' objections pursuant to local rule IB 3-1 to the magistrate judge's order denying the motion to compel (doc. # 58) be, and the same hereby, are OVERRULED.

IT IS FURTHER ORDERED that defendants' shall prepare an appropriate order consistent with this order.

DATED May 31, 2013.

_____
**UNITED STATES DISTRICT JUDGE**

James C. Mahan
U.S. District Judge

- 9 -